UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RLI INSURANCE COMPANY,

            Plaintiff,

        v.

CITY OF VISALIA,

            Defendant.

1:17-cv-01205-LJO-EPG

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

**(ECF Nos. 12, 13, 17, 18, 21, 22, 39-42)**

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District

Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

This is an insurance coverage dispute between Plaintiff/Counter-Defendant RLI Insurance Company ("RLI") and Defendant/Counter-Claimant, City of Visalia ("Visalia") regarding coverage for claims asserted against Visalia in an action pending before a different judge in this district. RLI brought this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 on September 7, 2017. (ECF No. 1). Visalia filed an answer along with a counter-claim for declaratory relief against RLI on September 29, 2017. (ECF No. 9).[1] The parties submit that there is jurisdiction pursuant to 28 U.S.C § 1332(a)(1) and that venue is proper.

On October 11, 2017, RLI filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) against Visalia. (ECF No. 12) ("Motion"). Visalia filed an opposition on October 25, 2017 (ECF No. 17) ("Opp.") and RLI filed a reply on November 1, 2017. (ECF No. 21) ("Reply"). While the motion for judgment was pending, Visalia requested to amend its answer and counter-claim. (ECF No. 19). The Court granted Visalia leave to amend and Visalia filed an amended answer and counter-claim on December 11, 2017. (ECF Nos. 29-31). The Court also allowed supplemental briefing on the limited issue of the impact of the amended pleading on the pending motion for judgment on the pleadings. (ECF Nos. 36-38). RLI

---

[1] Visalia also asserted claims against two other insurance carriers, Zurich American Insurance Company and The RiverStone Group. (ECF No. 9). These parties are not implicated in this motion.

and Visalia then filed supplemental briefs. (ECF Nos. 39 ("Supp. Br."), 41 ("Supp. Opp."), 42 ("Supp. Reply")). The parties' briefs were also accompanied by multiple requests for judicial notice which are addressed below. (ECF Nos. 13 ("RJN 1"), 18 ("RJN 2"), 40 ("RJN 3")).

The issue presented on the Rule 12(c) motion is whether a policy exclusion contained in the RLI insurance policy precludes insurance coverage in an underlying litigation brought against Visalia as a matter of law. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). Having considered the parties' briefing and the relevant law, the Court issues the following order.

### III. <u>BACKGROUND AND FACTUAL ALLEGATIONS</u>

RLI issued Policy No. R20040U, an umbrella liability insurance policy, to Visalia for the policy period March 8, 1978-1979 ("RLI Policy" or the "Policy"). (ECF No. 1, "Compl." at ¶ 10); (ECF No. 31, "Am. Answer" at ¶ 1). The Policy was attached to RLI's Complaint and to the Amended Answer.[2] The Policy provides that RLI will indemnify Visalia for sums it is obligated to pay by reason of liability "for damages, direct or consequential and expenses, all as more fully defined by the term 'ultimate net loss'[3] on account of: (i) Personal injuries, including death at

---

[2] Under Rule 10(c) of the Federal Rules of Civil Procedure, a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and may be considered on a motion for judgment on the pleadings. (Compl., Ex. A)(ECF No. 1-1); (Am. Answer, Ex. A). *See Tenopir v. State Farm Mut. Co.*, 403 F.2d 533 (9th Cir. 1968) (where court considered insurance policy attached to the complaint in a motion to dismiss for failure to state a claim); *Shame on You Productions, Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1144 (C.D. Cal. 2015) *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017) (in ruling on motion for judgment on the pleadings, district court can consider documents on which the complaint necessarily relies).

[3] As defined in the Policy, "Ultimate Net Loss" means "the total sum which the Assured or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as consequence of any occurrence covered hereunder, excluding only the salaries of the Assureds or of any underlying Insurer's permanent employees." (ECF No. 1-1).

any time resulting therefrom, (ii) Property Damage, [4] (iii) Advertising liability, caused by or arising out of each occurrence[5] happening anywhere in the world." (ECF No. 1-1). Additionally, the Policy also provides that RLI must "defend against any suit…alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent," if such suit is not covered by underlying policies listed in an appended Schedule or by other underlying insurance, but covered by the terms and conditions of the RLI Policy. (*Id.*). The RLI Policy contains certain Policy exclusions. The Policy exclusion at issue here provides:

> THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:
> The policy shall not apply:
>     …
> (f) as respects all operations,
>> (1) to the discharge, dispersal, release or escape of smoke, vapors, soot, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.
>> (2) for the cost of removing, nullifying or cleaning up substances described in (1) above.

(ECF No. 1-1).

The Policy is also subject to certain Policy conditions including a "prior insurance non-cumulation of liability" clause which provides that if any loss is covered in whole or in part under any other excess policy that is issued prior to the RLI Policy, the limit of liability under the Policy will be reduced by the amount due under the prior insurance. (*Id.*). Additionally, the policy has an "Other Insurance" clause which provides that if other collectible insurance with

---

[4] "Property Damage," as used in the Policy, means "loss of or direct damage to or destruction of tangible property other than property owned by the Named Assured." (ECF No. 1-1).

[5] "Occurrence" is defined as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or remaining from one premises location shall be deemed one occurrence." (ECF No. 1-1).

any other insurer is available that covers a loss covered by the RLI Policy, the insurance afforded by the RLI Policy will be in excess of and shall not contribute to such other insurance. (*Id.*).

Visalia claims that it is entitled to insurance coverage under RLI's Policy for an underlying lawsuit where Visalia was sued, *Mission Linen Supply v. City of Visalia*, Case No. 1:15-cv-00672-AWI-EPG, filed in the U.S. District Court Eastern District of California (the "Mission Linen Action" or "Underlying Action").[6] Mission Linen Supply ("Mission Linen"), a corporation that operated a commercial laundry facility, including dry cleaning, sued Visalia in relation to environmental contamination at and around property Mission Linen owned. (ML Compl. ¶¶ 1-2). The Underlying Action arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §9601 et seq. (*Id.* ¶ 2). Mission Linen was identified by the Department of Toxic Substance Control ("DTSC") as a responsible party for contamination in soil and ground water at and around its property by chlorinated solvents, primarily tetrachloroethylene also known as perchloroethylene ("PCE"). (*Id.* ¶¶ 8-9). On February 3, 2010, DTSC issued an Imminent and Substantial Endangerment Order ("2010 ISE Order") to Mission Linen indicating PCE is present in soil and groundwater at its property and required Mission Linen to "perform response actions and activities." (*Id.* ¶ 9). Specifically, "[t]he 2010 ISE Order requires [Mission Linen's] implementation of any appropriate removal actions, completion of a Remedial Investigation/Feasibility Study, preparation of a Remedial Action Plan or Removal Action Workplan, preparation of a California Environmental Quality Act document, and Design and Implementation of the remedial actions approved in the Remedial Action Plan." (*Id.* ¶ 13). The Mission Linen Action presents ten causes of action against Visalia including state law-based claims for nuisance in various forms,

---

[6] Both RLI's complaint and Visalia's answer attached the Mission Linen complaint as an exhibit. (Compl., Ex. C; Am. Answer, Ex. F) (ECF No. 1-3) ("ML Compl."). As discussed in note 2 above, the Court may properly consider this exhibit with regard to the pending Motion. *See Shame on You Productions, Inc.*, 120 F. Supp. 3d at 1144 ("if the complaint references a lawsuit that is the subject of an insurance coverage dispute, for example, the court can consider the pleadings in the underlying action" in ruling on a motion for judgment on the pleadings).

dangerous condition of public property, claims for declaratory relief under state and federal law, equitable indemnity, and for cost recovery and allocation under CERCLA. (*Id.* ¶¶ 34-115). The Mission Linen Action alleges that Visalia is liable for the environmental contamination (at least in part) due to Visalia's failure to maintain and repair its sewer system while accepting PCE for transport via the City's sewers. (*Id.* ¶¶ 21-25). More specifically, the Underlying Action alleges that the holes, cracks, and leaks in Visalia's sewer system and its failure to maintain and operate its sewers caused or contributed to the release of PCE resulting in the contamination of soil and groundwater at or around the Plaintiff's property since at least 1978. (*Id.* ¶¶ 24-25, 30-31). The Mission Linen Action correspondingly seeks damages pursuant to CERCLA for "all response costs incurred, and to be incurred by [Mission Linen], in response to the alleged release of PCE and other hazardous substances, in and around the Plaintiffs Property, and the environment…" (*Id.* at p. 20-21).

## IV. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "after the pleadings are closed— but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings." *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x. 734 (9th Cir. 2008). Correspondingly, a Rule 12(c) motion operates in the same way as a motion to dismiss under Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy")(internal quotation marks and citation omitted); *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (the legal standard of review governing 12(c) and 12(b)(6) motions are "functionally identical").

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990), *cert. denied*, 500 U.S. 917 (1991). "A district court will render a 'judgment on the pleadings when the moving party clearly

establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific—CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996); *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) ("A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law").

"All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *Schuett v. FedEx Corp.*, 119 F. Supp. 3d 1155, 1159 (N.D. Cal. 2016) ("A judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law"). "As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Seventh-Day Adventist Congregational Church*, 887 F.2d at 230. A motion for judgment on the pleadings will not be granted unless it appears "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co.*, 132 F.3d at 529 (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)); *Morgan*, 436 F. Supp. 2d at 1155.

When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice. *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted); *see also Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts") (per curiam). Under Rule 10(c) of the Federal Rules of Civil Procedure, a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and may be considered on a motion for judgment on the pleadings. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002)

("materials properly attached to a complaint as exhibits may be considered" on a motion for judgment on the pleadings).

# V. **DISCUSSION**

The primary issue for resolution on this Motion involves the contract interpretation of a policy exclusion that is contained in Visalia's insurance Policy with RLI. As set forth above, the relevant Policy exclusion provides:

> The policy shall not apply:
>
> …
>
> (f) as respects all operations,
>> (1) to the discharge, dispersal, release or escape of smoke, vapors, soot, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.
>> (2) for the cost of removing, nullifying or cleaning up substances described in (1) above.

(ECF No. 1-1).[7]

RLI argues that the Policy's exclusions under section f(2) precludes insurance coverage for the Mission Linen Action as a matter of law. RLI submits that the only material facts necessary to make this determination on its Motion is the RLI Policy and the complaint in the Mission Linen Action, neither of which Visalia dispute since both documents are attached to its answer. (Motion at 1). In response, Visalia has three arguments for why RLI is not entitled to judgment on the pleadings. First, Visalia argues that RLI's interpretation of section f(2) amounts to a "fundamental overreading of the exclusion" provided therein because both subparts (1) and (2) are qualified by the "sudden and accidental" exception that is contained in subpart (1). (Opp.

---

[7] Such insurance policy exclusions have been termed "pollution exclusions." *See generally MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 643-645 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (discussing history of pollution exclusion). Such pollution exclusion clauses come in different forms, have changed over time, and have been the subject of extensive litigation. *Id.* However, the specific form of the exclusion at issue in this case has been dealt with by far fewer cases.

at 1-2). Second, Visalia independently argues that even if RLI's interpretation of section f(2) were correct, RLI's Motion is "predicated on the fundamentally erroneous premise" that the Mission Linen Action only seeks "recovery of the costs to clean up contamination." (Opp. at 3; 21-23). Visalia contends that the Mission Linen Action also seeks property damages and contains various causes of action, including for nuisance and dangerous condition to public property which go beyond the "the cost of removing, nullifying or cleaning up substances." (*Id.*) Lastly, Visalia argues that the affirmative defenses it has asserted preclude granting judgment on the pleadings. (Opp. at 23-25). The Court addresses each of these arguments in turn.

### A.    Nature of the Pollution Exclusion In RLI's Policy

As an initial matter, jurisdiction in this case is based upon diversity, and both parties appear to agree that the interpretation of the subject insurance policy is governed by the law of the State of California. *See Continental Insurance Co. v. Metro-Goldwyn-Mayer, Inc.*, 107 F.3d 1344, 1346 (9th Cir. 1997) (applying California insurance law in diversity case).

RLI and Visalia interpret the subject policy exclusion under section f(2) differently. RLI contends that section f(2) is an absolute bar to coverage for any pollution cleanup costs with relation to "smoke, vapors, soot, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants," i.e. the substances described in f(1). In contrast, Visalia argues that the conditional statement that is included in section f(1) which provides that the Policy does not apply to a dispersal of contaminants "unless such discharge, dispersal, release or escape is sudden and accidental" is also applicable to reading f(2). Under such a reading of the exclusion in f(2), the cost of removing, nullifying, or cleaning up substances described in subpart (1) is precluded *unless the dispersal is sudden and accidental*. In support of its reading of subpart (2), Visalia makes a number of arguments. Visalia points to the history and intent of drafting such "qualified" pollution exclusions as intending to negate coverage for intentional polluters and encourage insureds to take precautions against long term conditions that may lead to pollution damages. Additionally, Visalia argues that reading subpart 2 as broader than subpart 1 would nullify the contracting intent of the parties and contravene common sense because RLI's broad reading "would in essence eliminate the 'sudden and

9

accidental' exception altogether since the 'property damage' remedies sought in connection with pollution losses necessarily involve 'removing nullifying or cleaning up' the pollution itself." (Opp. at 14). In support, Visalia points to other courts that have held that interpretation of pollution exclusion clauses must be read in the context of the entire policy. Lastly, Visalia argues that at a minimum, one reasonable interpretation of section f(2) is that it does not apply to exclude cleanup costs for sudden and accident dispersals. Correspondingly, Visalia contends it is ambiguous and any uncertainty in language of the contract must be construed against the insurer. (Opp. 17- 19).

### 1.  Principles of Contract Interpretation

"Interpretation of a contract is a purely legal question which is susceptible to a motion for judgment on the pleadings." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004) (citing *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003) (interpretation of a contract is a pure question of law)). Under California law, insurance policies are also contracts which can be interpreted as a matter of law, including the resolution of any ambiguity. *Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) ("Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation").

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties" which should be inferred solely from the written provisions of the contract if possible. *MacKinnon*, 31 Cal. 4th at 647. "If contractual language is clear and explicit, it governs." *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993), *as modified* (Sept. 21, 1993) (quoting *Bank of the West*, 2 Cal. 4th 1254, 1264 (1992)); *see also* Cal. Civ. Code, § 1638. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Pension Tr. Fund for Operating Eng'rs v.*

*Fed. Ins. Co.*, 307 F.3d 944, 949-50 (9th Cir. 2002) (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)) (citations omitted). "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins. Corp.*, 76 F. Supp. 3d at 879 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 19.

However, if contract language is considered ambiguous it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. *AIU Ins. Co.*, 51 Cal. 3d at 822; Cal. Civ. Code § 1649. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist, i.e. the insurer in insurance contracts. *Id.* (citing Cal. Civ. Code § 1654). "In the insurance context, we generally resolve ambiguities in favor of coverage." *Id.* "Coverage clauses are interpreted broadly so as to afford the greatest protection to the insured, while exclusion clauses are interpreted narrowly." *TBG, Inc. v. Commercial Union Ins. Co.*, 806 F. Supp. 1444, 1446 (N.D. Cal. 1990); *Mosten Mgmt. Co. v. Zurich-Am. Ins. Grp.*, No. C-89-3475 SBA, 1992 WL 685749, at *7 (N.D. Cal. June 19, 1992) ("it has long been the law in California that coverage clauses are broadly construed so as to afford the greatest possible protection to the insured and exclusionary clauses are interpreted narrowly against the insurer").

To be effective, an "exclusionary clause must be 'conspicuous, plain and clear.'" *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 273 (1966) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 878 (1962)). However, "[i]t must be kept in mind that an insurer is free to select the character of the risk it will assume" and an insurer "has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280 (1977) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.* 46 Cal. 2d 423, 432 (1956)).

## 2. The Scope of Section f(2)

In order to ascertain the scope of section f(2)'s exclusion, the Court first considers the language of the Policy. The Court's analysis first addresses whether the contract language in section f(2) is clear and explicit as a layperson would understand it. *ACL Techs., Inc.*, 17 Cal. App. 4th at 1785. Here, the policy exclusion at issue in section f(2) states that "the policy shall not apply…as respects all operations…for the cost of removing, nullifying or cleaning up substances described in (1) above." The exclusion is not qualified the same way that f(1) is for "sudden and accidental" contamination. The "substances described in (1)" are "smoke, vapors, soot, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants." The Court finds that the plain language in the policy exclusion is clear and explicit. "[A] court cannot and should not do violence to the plain terms of [an] [insurance] contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract." *Fresno Econ. Imp. Used Cars, Inc.*, 76 Cal. App. 3d at 280 (1977) (quoting *Matsuo Yoshida v. Liberty Mutual Insurance Co.*, 240 F.2d 824, 826-827 (9th Cir. 1957) (alteration in original).

The Court correspondingly finds that the language in section f(2) is not ambiguous and the Court need not look any further to ascertain the meaning of the contract language. "Where policy language is clear and explicit and does not lead to an absurd result, we ascertain this intent from the written provisions and go no further." *Cont'l Ins. Co. v. Superior Court*, 37 Cal. App. 4th 69, 81 (1995). The Court need not address Visalia's additional arguments since it finds that the meaning of Policy exclusion is clear and unambiguous.[8] "[W]here an exclusion is clear and

---

[8] Contrary to Visalia's argument concerning repugnancy, if the Court interpreted section f(2) as Visalia suggests, there would be no need to have clause f(2) at all, as such exclusion would be equivalent to what is contained in f(1) (Opp. at 14-16). Principles of contract interpretation require that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Clauses should be interpreted so that they are "capable of being carried into effect." Cal. Civ. Code § 1643. Furthermore, several of the cases cited in support of Visalia's interpretation are cases that deal with interpretation of the "sudden and accidental" exception. (Opp. 19-21). The

unambiguous, it is given its literal effect." *Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 153-54 (2003) (noting that insurers can exclude coverage for CERCLA response costs in enforceable exclusion provisions and holding there was no potential for coverage in light of plain policy language). Visalia clearly did not contract for insurance of cleanup costs for environmental contamination liability with RLI. "An insurer is entitled to limit its coverage to defined risks, and if it does so in clear language, [the court] will not impose coverage where none was intended." *Cty. of Stanislaus v. Travelers Indem. Co.*, 142 F. Supp. 3d 1065, 1070 (E.D. Cal. 2015) (quoting *Am. States Ins. Co. v. Sacramento Plating, Inc.*, 861 F. Supp. 964, 968 (E.D. Cal. 1994)); *Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1394 (2014) ("The insurer has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected") (internal citation omitted); *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App. 3d 888, 896 (1978) ("The courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not assumed"). The plain terms of f(2) clearly excludes coverage for the "cost of removing, nullifying or cleaning up substances" irrespective of whether the dispersal of such substances was "sudden and accidental." The Court respects the limitations to coverage that the parties contracted for as demonstrated by the written instrument which manifests the parties' mutual intention.

### B.   Damages Sought In The Mission Linen Action

Visalia additionally argues that even if RLI's interpretation of section f(2) is accepted, RLI still cannot show that the Policy exclusion precludes all coverage as a matter of law since

---

Court here does not reach the issue of interpreting "sudden and accidental" since a plain reading of f(2) renders that no such exception is applicable to section f(2). The out of circuit cases cited by Visalia to support its interpretation of section f(2) are not relevant or persuasive to the particular interpretation question before the court. (Opp. 16-17). For example, the court in *Carey Canada, Inc. v. California Union Ins. Co.*, 748 F. Supp. 8, 16 (D.D.C. 1990), found the pollution exclusion for the cost of removal and cleanup pertained only to oil and gas operations under the maxim of *noscitur a sociis* where seven of the eight pollution exclusions pertained to oil and gas operations).

the Mission Linen Action seeks other damages besides those "costs of removing, nullifying or cleaning up substances" which are precluded by subpart (2) of the Policy. (Opp. at 21-23). Visalia argues that "the relief sought by plaintiff in the Mission Linen Action is not limited to CERCLA 'response costs' incurred in connection with the alleged discharges of pollution" but that the action also seeks "compensatory damages," "incidental and consequential damages" as well as "attorneys' fees and costs" and "consultant fees." (Opp. at 22) (citing ML Compl., pg. 21:14-18).

In response, RLI argues that the only damages sought in the Mission Linen Action are CERCLA response costs associated with clean-up of contamination which is precluded by section f(2). (Reply 7-9). Accompanying RLI's motion for judgment was a request for judicial notice of an October 4, 2017 signed order by the court in the Mission Linen Action granting the stipulated request for voluntary dismissal of third through eighth causes of action without prejudice. (ECF No. 13, RJN 1, Ex. A).[9] Correspondingly, RLI argues that the "various forms of nuisance and dangerous condition of public property raised in the City's Opposition are no

---

[9] Under Federal Rule of Evidence 201(b), the district court is entitled to take judicial notice of facts which are not subject to reasonable dispute where it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice of undisputed matters of public record, including documents on file in federal or state courts, is permissible. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (taking judicial notice of documents that were on file in federal court in another litigation); *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue"). Here, Visalia does not dispute the accuracy of the voluntary dismissal of certain claims in the Underlying Action, which is a readily verifiable document filed in this district. Judicial notice is therefore proper. *See, e.g.*, *McCray-Key v. Sutter Health Sacramento Sierra Region*, No. 2:15-CV-1514-JAM-CKD, 2015 WL 6703585, at *2 (E.D. Cal. Nov. 2, 2015) (taking judicial notice of state and federal court documents including complaint, stipulation and order following removal, notice of settlement, and request for dismissal by plaintiff); *Corthera, Inc. v. Scottsdale Ins. Co.*, No. 14-CV-05014-EMC, 2016 WL 270951, at *2 n. 1 (N.D. Cal. Jan. 22, 2016) (taking judicial notice of court documents in another action including complaint, motion to dismiss, court order on motion to dismiss, stipulation to extend time to respond, scheduling order, notice of appeal, and order of voluntary dismiss of the appeal).

longer at issue" and that the remaining causes of action, "[First, Second, Ninth and Tenth,] each similarly seek clean-up costs for the alleged pollution." (Reply at 8) (citing ML Compl. ¶¶ 39, 52, 110, 114).[10] Visalia did not oppose the request for judicial notice of the order on dismissal.

Visalia appears to admit that CERCLA response costs are precluded by section f(2) if RLI's reading of the contract is accepted, as the Court has concluded is the clear and explicit reading. Instead, Visalia states that the Mission Linen Action additionally seeks other non-CERCLA damages which would not be precluded by section f(2). (Opp. at 22-23).[11] Without much elaboration, Visalia states that the dismissal of the third through eighth causes of actions does not affect damages allegations given the retention of the cause of action for indemnity. (*Id.* at 22). Visalia further argues that even if the majority of damages sought in that complaint are "response costs" then RLI would still have a duty to defend (and indemnify) Visalia if there was "*any* potential for liability under the policy" and that RLI cannot show as a matter of law that all forms of recovery sought by Mission Linen Action are excluded by section f(2) of the Policy. (*Id.* at 23). The cases cited by Visalia in support of this argument deal specifically with the duty to defend and not the duty to indemnify. (*Id.*) Because Visalia's argument concerning the potential for liability deals specifically with the duty to defend, the Court here addresses the broader scope of the law on the nature of this duty.[12]

---

[10] In a footnote RLI also argues that the dismissed causes of actions "nevertheless repeat in similar fashion that, damages are response costs incurred and to be incurred, in response to [i.e. to remove, clean-up and remediate] the alleged release of PCE and other hazardous substances." (Reply at 9, n. 2) (citing ML Compl., ¶¶ 66, 79, 84, 96 and 106).

[11] Visalia states that "even applying RLI's reading of subpart (2), its 'qualified' pollution exclusion as written does not preclude coverage for these additional and separate items of recovery *for non-CERCLA damages*." (Opp. at 22-23) (emphasis added).

[12] The duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). RLI does not address the nature of the duty to defend in its briefing but instead summarily states that the relief sought in the Mission Linen Action is precluded by section f(2). (Reply at 7-8). Neither parties' briefing addresses the impact of other insurance on RLI's duty to defend. Because the Court finds the Policy exclusion precludes coverage here, there is no need to interpret the other terms of the Policy since the parties have not addressed them.

### 1. **The Duty to Defend**

It is a well-accepted rule that "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy ...." *State Farm Mut. Auto. Ins. Co. v. Longden*, 197 Cal. App. 3d 226, 233 (1987) (quoting *Gray*, 65 Cal. 2d at 275) (emphasis in original). "Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires us to interpret the language of the insuring agreement and is a question of law." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 508 (2001); *see also Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 847 F. Supp. 1460, 1466 (N.D. Cal.), *opinion amended on reconsideration*, 875 F. Supp. 656 (N.D. Cal. 1994) ("Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue amenable to resolution on summary judgment.")[13] (internal citation omitted). As a first step, a court looks to the allegations of the third party complaint and compares them with the terms of the policy to see if they reveal a possibility for coverage under the policy. *Waller*, 11 Cal. 4th at 19 ("[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy"); *Barnett*, 90 Cal. App. 4th at 508-509; *see also Pension Tr. Fund for Operating Eng'rs.*, 307 F.3d at 949 (this determination "turns on all facts known by the insurer at the inception of the third party lawsuit").

"[T]o be entitled to a defense, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Barnett*, 90 Cal. App. 4th at 508 (internal quotation omitted). Although the duty to defend is broad, it "is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.

---

[13] Because summary judgment motions are also decided based on undisputed facts and as a matter of law, the applicable standard is equivalent. *See Roundtree v. Adams*, No. CV F 01 6502 LJO SMS, 2007 WL 1232173, at *5 (E.D. Cal. Apr. 25, 2007) ("In ruling on defendants' Rule 12(c) motion for judgment on the pleadings, appropriate standard is that applicable to summary judgment, except that court may consider only the contents of the pleadings, and the motion may be granted only where there are no genuine issues of material fact to be resolved and where defendant is entitled to judgment as a matter of law").

4th at 19. "[T]he insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 297 (1993). When the question of coverage can be determined as a matter of law on undisputed facts, an insurer may seek adjudication that "no potential for liability exists and thus that it has no duty to defend." *Id.* at 298. The "[c]ritical question" is whether the undisputed facts "conclusively eliminate a potential for liability." *Id.* at 298-99. Here, the undisputed facts come from the RLI Policy and the Mission Linen complaint.

### 2. The Injury Alleged In the Mission Linen Falls Squarely Within The Policy Exclusion

The RLI Policy explicitly excludes from coverage the cost of removal, nullification, and cleaning up environmental contamination. Therefore, there can be no doubt that RLI had no duty to defend insofar as plaintiff in the Underlying Action sought damages for the cost of removing, nullifying or cleaning up contaminating substances. Hence, the remaining issue is whether the remaining causes of action in the Mission Linen Action potentially implicate any other type of injury besides the cost of removing, nullifying or cleaning up contaminating substances that are precluded under section f(2). The remaining causes of action after the voluntary dismissal are the first, second, ninth and tenth causes of action. The first and second causes of action in the Mission Linen Action arise under CERCLA §§ 107(a), 113(f), 42 U.S.C. §§ 9607, 9613, ("CERCLA claims") and the ninth and tenth cause of action are for equitable indemnity and federal declaratory relief respectively. (ML Compl. ¶¶ 34-55, 107-115).[14] The CERCLA claims seek to hold Visalia liable for necessary response costs "including costs of investigation, removal and/or remedial actions in the investigation, clean up and abatement of the releases and

_____

[14] The stipulation of voluntary dismissal states that the eighth cause of action for "equitable indemnity" is dismissed (ECF No. 13, RJN 1, Ex. A), but the eighth cause of action is for continuing public nuisance per se. (ML Compl. at ¶¶ 97-106). Based on the parties' briefs, it appears the equitable indemnity claim, the ninth cause of action, was not dismissed. (Reply at 8; Opp. at 22).

threatened releases of the PCE." (ML Compl. ¶ 38, *see also* ¶¶ 42, 51-52). The ninth cause of action for equitable indemnity similarly seeks that Visalia "indemnify and hold harmless [Mission Linen] from and against any and all response costs, arising out of, or relating in any way to the contamination at the Property." (ML Compl. ¶ 110). The tenth cause of action for declaratory relief requests declaratory relief pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and seeks Visalia's contribution for "all necessary response costs and any other costs and attorneys' fees heretofore or hereafter incurred by Plaintiff in responding to the release or threatened release of PCE and other hazardous substances." (ML Compl. ¶¶112, 115).

In sum, plaintiff in the Mission Linen Action seeks relief for response costs associated with the environmental contamination of the relevant property. The terms "response" or "respond" are defined under CERCLA to mean "remove, removal, remedy, and remedial action" and "all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25). Such costs clearly come within the scope of the Policy exclusion in section f(2).

Section f(2) excludes the cost of removing, nullifying, or cleaning up contaminants without limitation. By the facts alleged in the complaint, Mission Linen seeks to recover all or part of the response costs associated with cleaning up the contamination caused by the dispersal of PCE. There are no facts alleged in the Mission Linen complaint that suggests there is some other injury besides the response costs associated with environmental contamination. "Because the underlying complaint did not seek covered damages, there was no potential for coverage." *Ulta Salon, Cosmetics & Fragrance, Inc. v. Travelers Prop. Cas. Co. of Am.*, 197 Cal. App. 4th 424, 430 (2011). "The scope of the duty [to defend] does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts…*reveal a *possibility* that the claim may be covered by the policy. *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) (emphasis in original). The facts alleged in the Mission Linen complaint do not indicate that any relief is sought other than costs of removing, nullifying, or cleaning up environmental contamination and thus the policy exclusion in f(2) bars the possibility of coverage. *See Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472, 1479

(1995) (granting summary judgment upon finding that underlying lawsuit fell squarely within the pollution exclusion and as such insurer had no duty to defend where evidence established as a matter of law there was no coverage); *see, e.g.*, *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 539 (1992) ("[s]ince the insuring clause was limited to third party claims for bodily injury and property damage, [insured] had no reasonable expectation of coverage" where no facts were alleged to suggest that underlying action was attempting to recover for covered claims related to property or bodily injury damages). Courts are to "look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend." *Gray*, 65 Cal. 2d at 275. The Policy here explicitly limits the kind of risks it covers to exclude costs of clean up associated with environmental contamination. A reading of the Mission Linen complaint shows that remediation of environmental contamination is the only relief sought.

Visalia cites to the prayer for relief in the Mission Linen complaint to support the argument that Mission Linen also seeks compensatory, consequential, incidental, consultant fees and attorneys' fees and costs, in addition to response costs. (Opp. at 22).[15] Such generic allegations cannot nullify the Policy exclusion when the complaint itself makes no factual allegations which suggest any injury besides seeking contribution for CERCLA response costs that Mission Linen has incurred or will incur. *See Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App. 4th 457, 469 (1994) (if pollution damage could simply be recast as other damage, such as personal injury, the pollution exclusion would be rendered a "dead appendage of the policy"). Simply enumerating different forms of relief in the prayer for relief cannot transform the nature of the injury alleged in the complaint into covered damages. No matter what theory of recovery is alleged, the actual damages Mission Linen seeks are the costs of clean up and remediation related to environmental contamination. Even if the Court considers the voluntarily dismissed

---

[15] There is only one paragraph in the complaint itself that conclusory states that Mission Linen has suffered "consequential, incidental, and general damages to be proven at trial" and it is part of the eighth cause of action, which was dismissed. (ML Compl. ¶ 99). Furthermore, CERCLA § 107 does not provide for an award of attorney's fees to a private litigant for bringing a cost recovery action. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994).

claims, it would strain the reading of the Mission Linen complaint to conclude that anything besides injury for costs identified in the section f(2) exclusion are sought.[16] The damages sought in the Mission Linen Action stem from environmental cleanup costs that are precluded by the terms of the RLI Policy.

The potential for liability in this case does not arise from disputed facts but hinges on the resolution of a legal question, i.e. whether environmental response costs under CERCLA fall under an insurance policy exclusion.[17] In such cases, courts have held that an insurer does not have a duty to defend "where the only potential for liability turns on the resolution of a legal question." *State Farm Mut. Auto. Ins. Co. v. Longden*, 197 Cal. App. 3d 226, 233-34 (1987) (concluding "as a matter of law that the policy did not cover a risk as contended by [insured]" and therefore insurer had no duty to defend). There are no facts currently before the Court, nor any legal authority cited by the parties that persuade the Court that Mission Linen is potentially

_____

[16] To the extent the dismissed claims identify property damages, response costs under CERCLA can constitute property damage but as discussed these response costs are the types of damages that are specifically excluded under section f(2). *See, e.g.*, *Allen v. Steadfast Ins. Co.*, No. CV 14-1218 JC, 2014 WL 12569527, at *18 (C.D. Cal. Aug. 22, 2014) (finding that to the extent underlying complaint's prayer for "costs of inspection and investigation in response to alleged release of pollutants…arguably could constitute damages," the policy did not "conceivably give rise to duty to defend because" a portion of the pollution endorsement expressly excluded coverage for "[a]ny loss, cost or expense arising out of any [¶] ... suit by or on behalf of a governmental authority for damages for ... in any way responding to or assessing the effects of 'pollutants.'"); *see also Larsen Oil Co. v. Federated Serv. Ins. Co.*, 859 F. Supp. 434, 438 (D. Or. 1994), *aff'd*, 70 F.3d 1279 (9th Cir. 1995) (granting summary judgment to insurer "because the complaints in the underlying action alleged a claim for property damage that would not have occurred but for the discharge of pollution, [therefore] the pollution exclusions clearly applied and the insurer had no duty to defend the insured"); (*see* ML Compl. ¶¶ 63, 66, 72, 77).

[17] Visalia's arguments that factual disputes remain as to whether the releases alleged in the Mission Linen Action were sudden and accidental are not relevant since f(2) absolutely precludes coverage for the "cost of removing, nullifying and cleaning up" environmental contaminants. Visalia's Opposition was accompanied by a request for judicial notice of litigation documents in the Underlying Action which indicate the parties in the Mission Linen Action stipulate that certain releases were sudden and accidental. (ECF No. 18, RJN 2, Exs. A-D). Because the Court finds it is not relevant to determine whether such releases were sudden and accidental, *supra* at n.8, the request for judicial notice is denied.

entitled to relief in the form of damages other than costs of removal and remediation of environmental contamination that is precluded under section f(2). Correspondingly, RLI has no duty to defend or indemnify against the Mission Linen Action.

### C. Visalia's Affirmative Defenses Do Not Preclude Judgment On the Pleadings

The existence of affirmative defenses usually precludes judgment on the pleadings. *See Gen. Conference Corp. of Seventh-Day Adventists*, 887 F.2d at 230. However, where affirmative defenses raise only questions of law, such affirmative defenses do not preclude judgment on the pleadings. *Unite Here Local 19 v. Picayune Rancheria of Chukchansi Indians*, 101 F. Supp. 3d 929, 934 (E.D. Cal. 2015) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)). "The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Id.* If a defendant's affirmative defenses create material issues of fact, judgment on the pleadings is precluded. *See Westport Ins. Corp.,* 76 F.Supp.3d at 882-83 (finding defendant's affirmative defenses failed to create a material issue of fact and therefore did not preclude judgment on the pleadings).

Here, Visalia argues that judgment on the pleadings cannot be granted because its "affirmative defenses…raise materials [sic] fact disputes not resolved by the undisputed allegations in the parties' pleadings." (Opp. at 24).[18] However, the only specific factual allegations in the Amended Answer that elaborate on the affirmative defenses relate to the defenses of unclean hands and forfeiture. With respect to these affirmative defenses, Visalia states it has alleged sufficient facts to show that RLI is barred from a motion for judgment on the pleadings, by "(1) knowingly and wrongfully disclaim[ing] its defense and indemnity obligations

---

[18] Visalia raises affirmative defenses of waiver, estoppel, laches, fraud on the part of RLI, duress, failure of consideration, accord and satisfaction, statute of limitations, res judicata and the statute of frauds. (ECF No. 9); (Opp. at 24). The Amended Answer added unclean hands and forfeiture as further affirmative defenses. (Am. Answer at ¶21-22). The parties' supplemental briefing on the amended answer and affirmative defenses focus on the defenses of unclean hands, forfeiture, and estoppel. The Court correspondingly only addresses these defenses to the extent necessary to resolve this motion.

towards the City with respect to the Mission Linen action; (2) repeatedly and knowingly asserting baseless legal theories of 'pollution exclusions, prior insurance non-cumulation and exhaustion of primary insurance' against the City by actions including, but not limited to, RLI's filing a baseless declaratory relief action; and (3) fail[ing] to meaningfully participate in ongoing settlement discussions notwithstanding its outstanding good faith obligations towards the City." (Supp. Opp. at 6).[19]

RLI argues that the additional affirmative defenses in the Amended Answer for unclean hands and forfeiture do not bear on the legal issue of the applicability of Policy exclusion under f(2).[20] RLI makes two arguments for why the affirmative defenses do not preclude granting its motion for judgment on the pleadings: (1) the affirmative defenses are not sufficiently pled; and (2) the factual allegations do not support a legal basis for the affirmative defenses. (Supp. Br. at 1). The Court here only finds it necessary to address RLI's second argument.[21] The factual basis

---

[19] The Amended Answer specifically states the RLI is barred from relief by the doctrines of unclean hands and forfeiture because RLI sought "declaratory relief…which RLI knew was not legally tenable under the known facts and applicable law, was unreasonab[e] and without proper cause, which attempt[ed] to elevate RLI's own financial interests above those of the City and which complicated ongoing settlement discussions without basis or reason save dilatory tactics and complicate preparation for trial." (Am. Answer at ¶¶ 21-22). To the extent Visalia uses its supplemental briefing to reiterate arguments it made in its initial opposition that do not relate to its affirmative defenses, the Court does not consider such briefing as it went beyond the scope of what was permitted by this Court's order on supplemental briefing. (*See* Supp. Opp. at 8-9; ECF No. 38).

[20] RLI's supplemental briefing was accompanied by a request for judicial notice of Visalia's Rule 26(a)(1) disclosures in this matter dated January 5, 2018. (ECF No. 40, RFN 3, Ex. A). The Court finds that the request is irrelevant to the outcome here and denies the request.

[21] With regard to RLI's first argument, the parties' briefing indicates that there is some disagreement about the appropriate standard for adequately pleading affirmative defenses but neither party addresses relevant Ninth Circuit precedent. District courts in this district have recently read the Ninth Circuit's decision in *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015), "to have resolved the split regarding whether the heightened 'plausibility' requirement set out in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] and [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009),] modifies the 'fair notice' standard traditionally applied to affirmative defenses" and have held that it does not. *California Brewing Co. v. 3 Daughters Brewing LLC*, No. 2:15-CV-02278-KJM-CMK, 2016 WL 4001133, at *1 (E.D. Cal. July 26, 2016) (quoting *United States v. Gibson Wine Co.*, No. 1:15-CV-1900-AWI-SKO, 2016 WL

22

for Visalia's affirmative defenses is essentially that RLI (1) improperly filed the current declaratory relief action; (2) improperly disclaimed its defense and indemnity duties; and (3) failed to participate in settlement discussions. (Suppl. Opp. at 6). However, these are legal arguments, the exact legal arguments which the Court has been asked to resolve on this motion. Since the Court has already resolved these legal issues in RLI's favor, these purported factual allegations fail to create a material issue of fact that would prevent judgment on the pleadings. *See Westport Ins. Corp.*, 76 F. Supp. 3d at 882 ("even if the affirmative defenses were adequately pleaded, they still fail to create a material issue of fact"). Arguing that RLI owed them insurance coverage cannot be the basis of precluding judgment on the pleadings as this is the legal determination the Court has been asked to make as to the proper interpretation of RLI's Policy exclusion under f(2). In this case, both parties agree that the insurance policy is the operative policy and that the Mission Linen complaint contains the operative facts for which Visalia seeks insurance coverage. Improper denial of insurance coverage in and of itself does not create a factual dispute if the question of coverage can be determined by looking at the contract itself and other agreed upon facts in the pleadings.

The Court briefly addresses the specific affirmative defenses discussed by the parties in their briefing – specifically unclean hands, forfeiture, waiver, and estoppel. "The unclean hands doctrine bars recovery by a plaintiff (1) whose behavior is tainted by inequity or bad faith (2) that occurred in acquiring the right he now asserts." *Ample Bright Dev., Ltd. v. Comis Int'l*, 913 F. Supp. 2d 925, 940 (C.D. Cal. 2012). The doctrine requires some wrongful act or misconduct. *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, No. CIVS082308FCDKJM, 2010 WL 1659195,

---

1626988, at *5 (E.D. Cal. Apr. 25, 2016)) (collecting cases); *see also Sherwin-Williams Company v. Courtesy Oldsmobile- Cadillac, Inc.*, 2016 WL 615335, *3 (E.D. Cal. Feb. 16, 2016) ("Since *Kohler*, every judge in this district that has evaluated the split in light of the *Kohler* decision has found that the fair notice standard should apply"). Neither party addresses the Ninth Circuit's decision in *Kohler* and whether it is determinative as to whether the heightened *Iqbal/Twombly* standard applies to the pleading of affirmative defenses. However, the Court here need not decide the issue as it is possible to determine whether the affirmative defenses preclude judgment on the pleadings on other grounds. *See Gibson*, 2016 WL 1626988, at *4 ("A defense may be insufficient either as a matter of law or as a matter of pleading").

at *5 (E.D. Cal. Apr. 22, 2010) ("The doctrine of unclean hands denies recovery where the claimant seeking relief commits a wrongful act directly relating to the transaction out of which the complaint is based"); *Ganley v. Cty. of San Mateo*, No. C06-3923 TEH, 2007 WL 902551, at *5 (N.D. Cal. Mar. 22, 2007) ("The doctrine of unclean hands generally applies to prevent a party from obtaining equitable relief and profiting from their own misconduct.") (internal quotation omitted). Visalia has not alleged any misconduct or wrongful act. Instead Visalia alleges that RLI has breached the contract by denying coverage and filing this action to get declaratory relief. The act of breaching a contract cannot also be the exact same act that constitutes unclean hands – otherwise every breach of contract would implicate the doctrine of unclean hands. *See e.g.*, *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *10 (N.D. Cal. Mar. 26, 2012) (striking affirmative defense of unclean hands because defendants did "not point to any conduct on Plaintiff's part that would provide grounds for an unclean hands defense").

Forfeiture is defined as a "deprivation or destruction of a right in consequence of the nonperformance of some obligation" and functions as "a penalty against the insurer for either misconduct or failure to perform some obligation under the contract." *Chase v. Blue Cross of Cal.*, 42 Cal. App. 4th 1142, 1149, 1151 (1996). The misconduct alleged by Visalia is RLI's failure to defend and indemnify. However, the Court has found that the RLI Policy excluded coverage for the Mission Linen Action such that denying coverage cannot by deemed misconduct or a failure to perform an obligation. Therefore, Visalia does not state an affirmative defense for forfeiture.

Likewise, Visalia's waiver and estoppel affirmative defenses do not preclude judgment on the pleadings. Waiver and estoppel are often used interchangeably in the insurance context. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 n.5 (9th Cir. 1991). Waiver generally requires some element of misconduct by the insurer and estoppel requires proof of the insured's detrimental reliance. *Id.*; *see also Waller*, 11 Cal. 4th at 33-34. As stated above, there are no facts alleged which show misconduct or detrimental reliance; denying insurance benefits that are not covered by an insurance policy cannot be the basis for waiver or estoppel. It is a

well-established rule that the principles of estoppel and implied waiver "are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (2010) (internal citation omitted); *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739, 755 (1980) ("Estoppel cannot be used to create coverage under an insurance policy where such coverage did not originally exist"). Visalia also argues that because "RLI breached its duties of good faith by failing to participate in settlement as required by its defense duty and wrongfully instituting this action" that there is an adequate factual basis to preclude judgment on the pleadings. (Supp. Opp. at 13). The breach of the covenant of good faith requires: (1) benefits that are due under the policy are withheld; and (2) the reason for withholding such benefits was unreasonable, in bad faith, or without proper cause. *Staefa Control-Sys. Inc.*, 847 F. Supp. at 1475. Benefits were not due under the Policy in this case thus the first requirement is not met. *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, at *6 (N.D. Cal. Feb. 1, 2010) ("The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation") (internal citation omitted); *Employers Ins. of Wausau v. California Water Serv. Co.*, No. C-06-03002 RMW, 2008 WL 3916096, at *16 (N.D. Cal. Aug. 25, 2008) (granting insurer's motion for summary judgment on counterclaim for breach of implied covenant of good faith and fair dealing where insurer had reasonable legal basis to contend that pollution exclusion excluded coverage); *SEMX Corp. v. Fed. Ins. Co.*, 398 F. Supp. 2d 1103, 1124 (S.D. Cal. 2005) (same); *Hydro Sys., Inc. v. Cont'l Ins. Co.*, 717 F. Supp. 700, 703 (C.D. Cal. 1989), *aff'd,* 929 F.2d 472 (9th Cir. 1991) (the fact that the pollution exclusion applied precludes bad faith claim). Therefore, "[i]t is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36 (emphasis in original).

Visalia's affirmative defenses are based on legal assertions not factual assertions that create a material dispute of fact. Whether RLI was required to defend and indemnify Visalia is

the legal question presented for resolution by RLI's motion for judgment on the pleadings. The very same issue styled by Visalia as factual assertions cannot then be deemed to create a material dispute of fact precluding judgment on the pleadings. Therefore, Visalia's affirmative defenses do not preclude granting RLI's motion for judgment on the pleadings.

## VI. **CONCLUSION AND ORDER**

For the reasons set forth above, RLI's motion for judgment on the pleadings is GRANTED. (ECF No. 12). Visalia's counter-claim for declaratory relief against RLI is likewise dismissed.

IT IS SO ORDERED.

Dated: __**March 19, 2018**__                    _____**/s/ Lawrence J. O'Neill**_____
                                                                    UNITED STATES CHIEF DISTRICT JUDGE